UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Lead Case No. 1:16-cv-02991-ELR |
| v. | ) ) | Case No. 1:16-cv-3226-ELR |
| 1.84 ACRES, MORE OR LESS, OVER THE FOLLOWING PARCEL(S) OF LAND: APPROXIMATELY 10.001 ACRES, MORE OR LESS, SITUATED IN LAND LOTS 570 AND 583 OF THE THIRD (3RD) LAND DISTRICT IN THE THIRD (3RD) SECTION, PAULDING COUNTY, GEORGIA; AND APPROXIMATELY 3.00 ACRES, MORE OR LESS, SITUATED IN LAND LOTS 570 AND 583 OF THE THIRD (3RD) LAND DISTRICT IN THE THIRD (3RD) SECTION, PAULDING COUNTY, GEORGIA AND MORE PARTICULARLY DESCRIBED HEREIN; AND BRUCE JOHNSON & KENDA JOHNSON; AND COMMUNITY TRUST BANK; AND MERS NOMINEE OF TAYLOR, BEAN & WHITAKER MORTGAGE CORP.; AND TAYLOR, BEAN & WHITAKER MORTGAGE CORP., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMMISSION'S REPORT AND RECOMMENDATION

Plaintiff Transcontinental Gas Pipe Line Company, LLC filed this *in rem* action against Defendant 1.84 Acres to condemn easements on certain parcels of land owned by Defendants Bruce and Kendra Johnson. At trial, the Johnsons will offer the testimony of an expert witness, Henry Manning, a certified general real estate appraiser, as evidence of what compensation they should be paid for the taking. Transco moves to exclude all Manning's testimony, saying it is "chock full of unreliable methodology, *ipse dixit* reasoning, and irrelevant, questionable 'facts' that wouldn't be properly before the Commission even if they were true."[1] The Commission recommends that the motion be granted in part and denied in part.

## I.    STANDARDS FOR ADMISSION OF EXPERT TESTIMONY

Under Federal Rule of Evidence 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[1] Dkt. 76 at 1. Unless noted, all docket citations are to this action, No. 1:16-cv-3226-ELR.

(d) the expert has reliably applied the principles and methods to the facts of the case."[2]

Rule 702 requires district courts to act as "gatekeepers" to "ensure the reliability and relevancy" of proposed expert testimony, whether scientific or technical/specialized.[3] This gatekeeping is critical because jurors may find expert testimony difficult to evaluate or may be confused or misled by it[4] and because, unlike ordinary witnesses, expert witnesses have "wide latitude" to opine without having "firsthand knowledge or observation" and may sometimes base their testimony on inadmissible evidence.[5] As gatekeepers, courts in this Circuit conduct a "rigorous three-part inquiry" under Rule 702: (i) is the expert qualified to testify competently about the matters on which he or she will testify? (ii) is the expert's methodology on which his or her conclusions are based sufficiently reliable? and (iii) will the expert's testimony help the factfinder to understand the evidence or find a fact in issue?[6] These three prongs—qualification, reliability, and

---

[2] Fed. R. Evid. 702. The Federal Rules of Evidence apply here. Fed. R. Civ. P. 43(a).

[3] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993) (addressing scientific evidence); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 152 (1999) (addressing technical/specialized evidence).

[4] *Daubert*, 509 U.S. at 592, 595; *U.S. v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (addressing scientific evidence) (en banc).

[5] *Daubert*, 509 U.S. at 592; *see* Fed. R. Evid. 703.

[6] *Frazier*, 387 F.3d at 1260 (citations omitted).

helpfulness—are distinct, and the party offering the evidence has the burden to show each is met.[7]

On the qualification prong, a witness may be qualified as an expert by virtue of "knowledge, skill, experience, training, or education,"[8] and experience alone (or combined with other knowledge, skill, training, or education) will suffice to establish an expert is qualified.[9] "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."[10] On the reliability prong, because "there are many different kinds of experts and many different kinds of expertise" (including land valuation), many factors can be relevant to assessing whether an expert's methodology is reliable, and not every factor "will be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[11] As such, courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."[12] Whether the expert opinions "are, in fact, scientifically or technically correct" is not considered, only whether they have the

---

[7] *Id*. Decisions to admit or exclude expert evidence are reviewed for abuse of discretion, *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997), and courts deciding admissibility are not bound by the Rules of Evidence. Fed. R. Evid. 104.

[8] Fed. R. Evid. 702.

[9] *Id.* advisory committee's note.

[10] *Id.*

[11] *Kumho Tire*, 526 U.S. at 150; *Frazier*, 387 F.3d at 1262.

[12] *Kumho Tire*, 526 U.S. at 151; *Frazier*, 387 F.3d at 1262.

"earmarks of reliability."[13] On the helpfulness prong, courts assess whether the proposed expert testimony will help the factfinder, that is, whether the expert testimony "concerns matters that are beyond the understanding of the average lay person."[14]

The Rule 702 analysis is "a flexible one" that is "'tied to the facts'" of each case,[15] and the focus "must be solely on principles and methodology, not on the conclusions that they generate."[16] Also, courts are mindful that gatekeeping "'is not intended to supplant the adversary system or the role of the jury.'"[17] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[18] And because Rule 702 replaced *Frye*'s "austere standard," it must be applied in the spirit of the Rules' "general approach of relaxing the traditional barriers to 'opinion' testimony."[19]

---

[13] Charles A. Wright et al., 29 FEDERAL PRACTICE & PROCEDURE § 6262 (If these earmarks of reliability are present, the testimony is admitted and "subjected to the kind of adversarial attack that facilitates the jury's central functions of deciding what weight to attribute to the evidence and which witnesses to believe.").

[14] *Frazier*, 387 F.3d at 1262-63.

[15] *Id.* (quoting *Daubert*, 509 U.S. at 594).

[16] *Daubert*, 509 U.S. at 594-95; *Kumho Tire*, 526 U.S. at 150-52; *Frazier*, 387 F.3d at 1261-62.

[17] *U.S. v. Williams*, 865 F.3d 1328, 1340 (11th Cir. 2017) (citations omitted).

[18] *Daubert*, 509 U.S. at 596; *see* Fed. R. Evid. 702, advisory committee's notes.

[19] *Daubert*, 509 U.S. at 588-89.

The role of expert testimony in federal condemnation actions and due process concerns also inform the Rule 702 analysis. Expert testimony "acquires special significance in an eminent domain proceeding where the sole issue is the value of condemned property,"[20] which landowners have the burden to prove.[21] In this context, courts are careful not to exclude expert testimony of either party if that testimony could help the factfinder determine fair market value:

> Eminent domain proceedings commonly pit the Government's valuation experts against those of the landowner. Thus, the exclusion of one or all of either party's proposed experts can influence substantially the amount of compensation set by the factfinder. Not only does the landowner have a strong interest in receiving just compensation for property, the public as well has vested interests in insuring that the Government does not pay more than what the owner justly requires. Recognizing the critical role of expert witnesses in these cases and the strong interest on both sides that compensation be just, trial courts should proceed cautiously before removing from the jury's consideration expert assessments of value which may prove helpful.[22]

One reason this caution is necessary is that "[v]aluation [of property] is not a matter of mathematics…. Rather, the calculation of true market value is an applied science, even a craft."[23] "The only absolute standard is that provided by the

---

[20] *U.S. v. 68.94 Acres,* 918 F.2d 389, 393 (3d Cir. 1990).

[21] *U.S. v. Reynolds*, 397 U.S. 14, 16 (1970).

[22] *68.94 Acres*, 918 F.2d at 393; *accord U.S. v. 14.38 Acres*, 80 F.3d 1074, 1077-78 (5th Cir. 1996); *U.S. v. 25.406 Acres*, 172 F.2d 990, 995 (4th Cir. 1949).

[23] *CSX Transp., Inc. v. Ga. State Bd. of Eq.*, 552 U.S. 9, 16–17 (2007); *accord Mont. Ry. Co. v. Warren*, 137 U.S. 348, 353 (1890) ("At best, evidence of value is largely a matter of opinion, especially as to real estate."); *Nat'l R.R. Pass. Corp. v. Certain Temp. Easements*, 357 F.3d 36, 39 (1st Cir. 2004) ("Determining the value of real estate is not a science" (citing 5 *Nichols on Eminent Domain* §§ 17.1940,

Constitution … and the only sure guide in a difficult condemnation case is …

What compensation is 'just' both to (the) owner whose property is taken and to the

public that must pay the bill?"[24] Another reason for caution is that a property's fair

market value is "an element which the owner of land is entitled, under the Fifth

Amendment, to have considered in determining the amount to be paid as just

compensation upon a taking by eminent domain."[25] Otherwise, a landowner may

be denied a fair trial and due process.[26]

The Johnsons urge that the Commission's gatekeeping function matters less

here since *Daubert* aims to protect juries and the Commission sits as judge and

jury as in a bench trial.[27] Technically, however, the Commission sits as a master

---

23.01 (2001)); *U.S. v. 1,378.65 Acres,* 794 F.2d 1313, 1318–19 (8th Cir. 1986)
("Appraising real estate is more an art than a science; it is incapable of
mathematical precision and implicates methods of judgment."); *In re Brampton
Plantation, LLC*, 2012 WL 707062, at *7 (S.D. Ga. Mar. 5, 2012) ("Real estate
appraising is anything but an exact science" (citation omitted)).

[24] *U.S. v. 320.0 Acres*, 605 F.2d 762, 781 (5th Cir. 1979) (citations omitted).

[25] *Mitchell v. U.S.,* 267 U.S. 341, 344–45 (1924).

[26] *E.g., U.S. v. 0.161 Acres*, 837 F.2d 1036, 1042 (11th Cir. 1988) (holding that
trial court abused its discretion and deprived property owners of fair trial by
excluding their expert testimony where there was only one issue for trial (the
property's value), the expert's testimony addressed that issue, and the testimony
would not mislead or confuse the jury).

[27] *See U.S. v. Brown*, 415 F. 3d 1257, 1268-69 (11th Cir. 2005) ("there is less need
for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for
himself"); *accord David E. Watson, P.C. v. U.S.*, 668 F.3d 1008, 1015 (8th Cir.
2012); *Deal v. Hamilton Cty. Bd. of Educ*, 392 F.3d 840, 852 (6th Cir. 2004);
*Gibbs v. Gibbs*, 201 F.3d 491, 500 (5th Cir. 2000); *see Frazier*, 382 F.3d at 1263
("Simply put, expert testimony may be assigned talismanic significance in the eyes
of lay jurors, and, therefore, the district courts must take care to weigh the value of

under Rule 53(c) over which courts exercise more oversight.[28] So it is bound by the

Court's Instructions, including that the Rules of Evidence and *Daubert* apply, and

it must admit and exclude evidence consistent with these and the Court's Orders.[29]

Practically, since all the Commissioners here are lawyers, the Commission can

separately weigh the admissibility and probative value of evidence without

prejudice to the parties and does not need *Daubert*'s protections as much as a jury.

## II.   TRANSCO'S MOTION TO EXCLUDE MANNING'S PROPOSED EXPERT TESTIMONY

Preliminarily, in federal condemnation actions, courts look to state law only

to define the specific property interests for which compensation must be paid.[30]

Otherwise, these actions are "governed by federal law, and state decisions and

statutes are neither controlling nor persuasive."[31] So the Commission may not

---

such evidence against its potential to mislead or confuse."). *Cf. UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832-33 (3d Cir. 2019) ("Rule 702 applies whether the trier of fact is a judge or a jury," though the court "may conditionally admit the expert testimony subject to a later Rule 702 determination."); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010) ("[T]he usual concerns of [Rule 702]—keeping unreliable expert testimony from the jury—are not present in [a bench trial] setting, and our review must take this factor into consideration.").

[28] Fed. R. Civ. P. 71.1(h)(2)(D); *see U.S. v. 434.00 Acres*, 792 F.2d 1006, 1101 (11th Cir. 1986) (district court will impose stricter review over a commission's report than it would with a general jury verdict).

[29] No. 1:16-cv-2991, Dkt. 163 at 6.

[30] *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984).

[31] 12 FEDERAL PRACTICE AND PROCEDURE § 3042; *accord U.S. v. An Easement & Right-of-Way Over 1.58 Acres*, 343 F. Supp. 3d 1321, 1344 (N.D. Ga. 2018)

consider Georgia statutory or case law or treatises that the parties may cite except for the purpose of defining the easements here, which the Court's Instructions already address. Also, "the practices and procedures of federal eminent domain actions, including those filed pursuant to the Natural Gas Act, are governed by Rule [71.1] and not by state law."[32]

## A.  Manning's Testimony on Highest and best use

Transco first argues that Manning's expert testimony on the Johnson's property's highest and best use—its development as a residential subdivision—should be excluded because it is "speculative" and not based on "sufficient facts or data."[33] To Transco, no evidence shows that the property's development is reasonably likely to occur in the near future or would be financially feasible, maximally productive, or legally permissible.[34] The Johnsons respond that Transco's own expert agrees a "probable buyer" is a "developer" and Manning does provide a sufficient factual basis for his opinion.[35] The Commission

---

("Federal law, rather than state law, governs just compensation in a federal condemnation action.") (citing *U.S. v. Miller*, 317 U.S. 369, 379-80 (1943)).
[32] *Transcontinental Gas Pipe Line Co., LLC v. 6.04 Acres*, 910 F.3d 1130, 1153 (11th Cir. 2018) (citation omitted), *cert. denied sub nom. Goldenberg v. Transcontinental Gas Pipe Line Co., LLC,* 139 S. Ct. 1634 (2019).
[33] Dkt. 76 at 8-9.
[34] Dkt. 76 at 7-12.
[35] Dkt. 78 at 7-14.

recommends that Transco's motion to exclude Manning's highest and best use testimony be denied.

To recap the applicable law, under the Fifth Amendment's Takings Clause, just compensation must be paid for the government's taking of private property.[36] Generally, just compensation is "the full monetary equivalent of the property taken," i.e., its "fair market value," which "put[s] [the owner] in the same position monetarily as he would have occupied if his property had not been taken."[37] Where the taking is partial, the compensation is "the difference between the fair market value of the land as a whole with and without the burden."[38] Determined at the time of taking,[39] fair market value includes "All elements of value that inhere in the property, but it does not exceed market value fairly determined" and "is to be arrived at upon just consideration of All the uses for which it is suitable."[40] Since buyers "purchase land with an eye to not only its existing use but to other potential

---

[36] U.S. Const. amend. V; *see Brown v. Legal Found.*, 538 U.S. 216, 236-37 (2003) ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation…. [T]he 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain.").

[37] *Reynolds*, 397 U.S. at 16; *see Olson v. U.S.*, 292 U.S. 246, 255-562 (1934).

[38] *U.S. v. Robertson*, 354 F.2d 877, 880 (5th Cir. 1966). In *Bonner v. City of Pritchard*, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[39] *Kirby Forest Indus., Inc. v. U.S.*, 467 U.S. 1, 10 (1984); *320.0 Acres*, 605 F.2d at 781.

[40] *Olson*, 292 U.S. at 255 (capitalization in original).

uses as well," fair market value "includes any additional market value it may command because of the prospects for developing it to the 'highest and best use' for which it is suitable."[41] The factfinder must consider the highest and best use "to the full extent that the prospect of demand for such use affects the market value while the property is privately held."[42]

Current use is often the highest and best use,[43] but owners may also prove that use is "not the highest and best use … as viewed by a potential purchaser."[44] To do so, they must show the potential use is one "for which the property is adaptable and needed or likely to be needed in the reasonably near future,"[45] in other words, practicable and reasonably probable.[46] Potential uses "within the realm of possibility" but "not fairly shown to be reasonably probable" should not be considered as part of fair market value.[47] "[O]nce the landowner has produced credible evidence that a potential use is reasonably practicable and reasonably probable within the near future, it is for the jury (or commission) to decide whether

---

[41] *320 Acres*, 605 F.2d at 781.
[42] *Olson*, 292 U.S. at 255
[43] *See U.S. v. 158.24 Acres*, 515 F.2d 230, 233 (5th Cir. 1975).
[44] *U.S. v. Buhler*, 305 F.2d 319, 328-29 (5th Cir. 1962).
[45] *Olson*, 292 U.S. at 255.
[46] *320 Acres*, 605 F.2d at 817.
[47] *Olson*, 292 U.S. at 257; *see 320 Acres*, 605 F.2d at 814-15.

11

the property's suitability for this use enhances its market value, and, if so, by how much."[48]

Turning to Transco's motion on highest and best use, although not disputed, the Commission finds that, as a certified general real property appraiser, Manning is qualified to testify about the Johnson's property's highest and best use.[49] The Commission also finds that his testimony about the property's highest and best use would help the factfinder to determine the primary if not sole question for trial, what would be just compensation for this taking.

On the reliability prong, the Commission has carefully reviewed Manning's expert report and supporting documents, the excerpts of his deposition testimony,[50] Transco's rebuttal report and supporting documents, and the Court's Instruction on highest and best use.[51] Focusing as it must only on Manning's methodology and not his conclusions, the Commission finds that the Johnsons have offered credible evidence at this juncture to show that his methodology is reliable.[52] Manning has

---

[48] *320 Acres*, 605 F.2d at 817.

[49] *See* Dkt. 76-1 at 66–75.

[50] The Commission's review of Manning's testimony is limited by having only excerpts of his deposition testimony.

[51] No. 1:16-cv-02991-ELR, Dkt. 164 at 17-18.

[52] *See 320.0 Acres*, 605 F.2d at 819 ("If the party offering the potential use evidence …, is able to meet this threshold burden, then evidence pertaining to that use must be submitted to the trier of fact under whatever instructions are appropriate, and the weight of that evidence as regards the fair market value of the property is for the trier of fact to decide."); *U.S. v. An Easement & Right-of-Way Over 6.09 Acres*, 140 F. Supp. 1218, 1233 (N.D. Ala. 2015) (landowner must make

(i) examined whether the property's development as a subdivision is physically possible, legally permissible, financially feasible, and maximally productive;[53] (ii) physically observed the property and analyzed its acreage and topography;[54] (iii) evaluated its current zoning and future land-use restrictions;[55] and (iv) assessed whether its CUVA designation[56] would prevent development as a subdivision.[57] Based on his knowledge of and experience in the local real estate market, his own observations of development in the local area,[58] and his communications with the Johnsons about their property,[59] he finds that a subdivision development would be financially feasible and maximally productive. Whether he has reviewed a cost or market analysis, if required, goes to the weight of his testimony and should be

_____

"preliminary, prima facie showing" that use is "practicable" and a "reasonable likelihood" it "would be so used in the reasonably near future").

[53] Dk. 76-1 at 29. These factors appear to come from *The Appraisal of Real Estate*, *see U.S. v. 1.604 Acres*, 844 F. Supp. 2d 668, 679 (E.D. Va. 2011) (citing *The Appraisal of Real Estate* 278-79 (13th ed. 2008)), or from The Yellow Book, *see infra* note 60. *Olson* holds only that what is determinative is whether the property is "adaptable and needed or likely to be needed [for that use] in the reasonably near future." 292 U.S. at 255-57; *accord 320.0 Acres*, 605 F.2d at 817 ("reasonably practicable and reasonably probable within the near future").

[54] Dkt. 76-1 at 9, 12, 15, 17, 19, 23-27, 30-33; Dkt. 78-1 at 32-34, 40-42. References to deposition excerpts are to Docket not deposition pages.

[55] Dkt. 76-1 at 12-13.

[56] Under Georgia law, certain properties may be eligible for substantially reduced property taxes if the owner designates them as a "Conservation Use Value Assessment" (CUVA) for a ten-year period.

[57] Dkt. 76-1 at 13; Dkt. 78-1 at 43 (tax consequences if CUVA were breached, but CUVA would not prevent development).

[58] Dkt. 78-1 at 34-38.

[59] Dkt. 76-1 at 4; Dkt. 78-1 at 8-9, 10-11, 30-31.

addressed on cross examination. Taken as a whole, his report provides a thorough and detailed evaluation of the property's characteristics, the surrounding area, and the likely pattern of development. All this shows that Manning's methodology for his highest and best use testimony is sufficiently reliable and is akin to that federal government appraisers regularly use in this context.[60]

Importantly, in finding that Manning's methodology is reliable and his testimony is helpful, the Commission does not give his testimony its imprimatur, nor does it make any premature findings of fact or suggest that his testimony will carry the day.[61] Once Manning testifies, Transco will have ample opportunity through cross examination to test his experience, knowledge, and credibility as well as his testimony on highest and best use. Again, "[v]igorous cross-

---

[60] *See* Interagency Land Acquisition Conference, UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS §§ 1.4.3–1.4.7 (6th ed. 2016) (discussing higher and best use of property). The U.S. Attorney General formed the Conference in 1968. *Id.* at 1 (Foreword). The Uniform Appraisal Standards for Federal Land Acquisitions (The Yellow Book) sets standards for appraisals and appraisal reviews on real property that the federal government is acquiring in order to "promote fairness, uniformity, and efficiency" in appraisals in these acquisitions. *Id.* § 0.1. (Purpose). Manning is technically not subject to The Yellow Book standards because it "applies only to appraisers hired by the federal government for condemnation purposes" and "is not mandatory with respect to appraisers not hired by the government." *Hardy v. U.S.*, 141 Fed. Cl. 1, 32 (2018). These standards may be relevant, however, if he testifies that he complies with them. *Id.*

[61] Fed. R. Evid. 702 advisory committee's note ("When a trial court … rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. The amendment is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise.").

examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence."[62] Also, because experts often reach "different conclusions

based on competing versions of [disputed] facts," courts should not exclude

testimony because they "believe[] one version of the facts and not the other."[63] On

a Rule 702 motion, then, the Commission may not consider Manning's

conclusions, still less the merits, but may only assess his qualifications,

methodology, and helpfulness.[64]

## B.   Manning's Testimony on Safety and Safety Buffer

Transco next moves to exclude Manning's expert testimony about the

necessity of and compensation for a safety buffer, which amounts to some two

additional acres not in the easement.[65] To Transco, Manning is not qualified

because he is not a safety expert and was not disclosed as such, his safety buffer

testimony is not based on facts or data, and his opinion is irrelevant to determining

---

[62] *Daubert*, 509 U.S. at 595.

[63] Fed. R. Evid. 702, advisory committee's note.

[64] *See, e.g., Sabal Trail Transmission, LLC v. 0.589 Acres*, 2018 WL 3655556, at
*7 (M.D. Fla. Aug. 2, 2018) ("[I]t appears that [plaintiff] is [improperly]
attempting to masquerade a request for summary judgment under the guise of a
*Daubert* motion"; disallowing request because whether two parcels are part of
single parent track is question of fact for jury).

[65] Dkt. 76-1 at 44.

damages.[66] The Johnsons respond that property appraisers regularly testify to stigma damages, i.e., about prospective buyers' perceptions of the safety of natural gas pipelines, as long as they connect those stigma damages to the value of the property and that Transco's objections go to the weight, not admissibility, of his safety buffer testimony.[67] The Commission recommends that the Court grant Transco's motion to exclude Manning's safety and safety buffer testimony.

On qualifications, the Commission finds that, as a real estate appraiser, Manning has no knowledge, skill, experience, training, or education in safety buffers and is not a safety or hazard expert, which he admits.[68] As such, he is not qualified to testify about safety or safety buffers for natural gas pipelines.

On reliability, the Commission finds that, without considering Manning's conclusions, his methodology on safety and safety buffers is not reliable and the facts or data on which his proposed testimony is based are not sufficient. Manning's testimony that a 100-foot safety buffer is necessary is based not on laws or regulations (he is not aware of any) or on any facts or data other than: (i) his belief that no one would build a house on the edge of a pipeline; (ii) his research about safety buffers for overhead power lines, utility corridors, and streams; and

---

[66] Dkt. 76-1 at 12-15. Transcontinental also argues that Manning improperly counts the condemned easement and counts it again in the safety buffer. *Id.* at 14-15.
[67] Dkt. 78 at 14-17.
[68] Dkt. 78-1 at 27.

(iii) his review of a Wikipedia article about a 1999 natural gas pipeline explosion in the State of Washington.[69] What this shows is that the source of Manning's testimony, and what he relies on, is information from others which he sought out for the purpose of testifying in this action, not his own independent expert analysis using his knowledge, skill, experience, training, or education as a safety or hazard expert. On deposition, he provided only vague explanations of the safety buffer concept and the justifications for it.[70] Given all this, his methodology is not reliable. His proposed expert testimony on safety and safety buffers only summarizes the opinions of others, who may or may not be qualified and whose methods may or may not be reliable. Even if Manning relied on other experts, Rules 702 and 703 do not permit him to "simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied on."[71] His testimony is also not based on sufficient facts or data. Other than the above, he has no facts or data and no independent analysis to support his safety and safety buffer testimony. And regularly hold that Wikipedia lacks the reliability the

---

[69] Dkt. 78-1 at 26-29; Dkt. 76-1 at 44; *see id.* at 45.

[70] Dkt. 78-1 at 26-29.

[71] *In re Polyproylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (S.D. Fla. 2000).

Federal Rules of Evidence require to form the basis of an expert opinion.[72] That

Wikipedia disclaims its information's reliability confirms this.[73]

Last, Manning's safety buffer testimony would not be helpful to the

factfinder. The safety buffer concept would in effect operate as a separate taking of

property in addition to the easements here, but this is not grounded in just

compensation law. The proper measure of compensation in a federal condemnation

action is the difference between before-taking and after-taking fair market value,

which includes the concept of severance damages.[74] This, however, is not

Manning's proposed testimony, nor does he connect his safety and safety buffer

testimony with the fair market value of the property. So his testimony is not

relevant to damages here. Indeed, it runs counter to the Court's Instructions "to

assume that the improvements made by the plaintiff will be made and maintained

---

[72] *E.g., Campbell v. Sec'y of Health & Human Servs.,* 69 Fed. Cl. 775, 781 (Fed. Cl. 2006) (discussing problems with information in Wikipedia and reversing special master's finding because she relied on Wikipedia article).

[73] *See* https://en.wikipedia.org/wiki/Wikipedia:General_disclaimer (general disclaimer stating that: (i) "nothing found [on Wikipedia] has necessarily been reviewed by people with the expertise required to provide you with complete, accurate or reliable information," (ii) Wikipedia "cannot guarantee the validity of the information found here," and (iii) content "may recently have been changed, vandalized, or altered by someone whose opinion does not correspond with the state of knowledge in the relevant fields.").

[74] *Sabal Trail Transmission, LLC v. 3.921 Acres*, 947 F.3d 1362, 1365 n.3 (11th Cir. 2020) (defining severance damages as "compensation awarded to a landowner for the loss in value of the tract that remains after a partial taking of the land" (citing BLACK'S LAW DICTIONARY (11th ed. 2019))).

in a careful and proper manner" and that "[a]ny damage that may result from the plaintiff's failure to do so …forms no part of this condemnation proceeding."[75]

For these reasons, Manning's testimony about safety and a safety buffer must be excluded under Rule 702, including all related opinions, facts, and references. Where expert testimony is "connected to existing data only by the *ipse dixit* of the expert" or where "there is simply too great an analytical gap between the data and the opinion proffered," expert testimony must be excluded.[76] While Manning may testify at trial, subject to objections, about so-called stigma damages—his safety and safety buffer opinions are not testimony about stigma damages, which are those based on fear of environmental harms or risks that "decreas[e] the market value of the property"[77]— he may do so only if he connects his testimony to the fair market value of the property, i.e., he shows that the stigma affects the market value of the Johnsons' property.

## C.    Manning's Testimony about Property Interests

Transco argues that Manning's entire expert testimony and his testimony on the property interests should be excluded because he erroneously testified on deposition that Transco's permanent easement is in fee simple and its temporary

---

[75] No. 1:16-cv-02992-ELR, Dkt. 164 at 22-23.
[76] *Joiner*, 522 U.S. at 146.
[77] *U.S. v. 14.38 Acres*, 80 F.3d 1074, 1078-79 (5th Cir. 1996).

easements should be considered permanent.[78] The Johnsons argue that Manning

has analyzed the easements and concluded that in substance Transco's permanent

easement is in fee simple and its temporary easement is permanent.[79] The

Commission recommends that Transco's motion to exclude Manning's entire

testimony and his testimony on the property interests be denied.

On qualifications, while Manning is plainly not qualified to give a legal

opinion on the easements, the Commission does not require such an opinion of

him. Nor does Manning purport to provide one. In his report and in his deposition,

he states that he is not an attorney, and he is careful to say that he is not giving a

legal opinion on these property interests and that his report and testimony on

valuation could change if his view of the interests were incorrect.[80] Moreover, the

Court's Instructions, which the Commission must follow, define the relevant

property interests.[81] Even so, Manning is still qualified to testify about the

easements as a real estate appraiser. Setting aside his conclusions, his methodology

appears sufficiently reliable at this stage. Consistent with The Yellow Book,[82] he

_____

[78] Dkt. 76-1 at 15-17.

[79] Dkt. 78 at 17-19.

[80] *See* Dkt. 76-1 at 10-11; Dkt. 78-1 at 23-26.

[81] No. 1:16-cv-02991-ELR, Dkt. 164 at 2 (Instruction No. 1) ("[I]t would be a violation of [a] commissioner's duty to base a decision upon any other view of the law than that given in the Instructions of the Court."); *id.* at 11-13 (Instruction Nos. 6 (permanent easements) & No. 7 (temporary easements)).

[82] *See* UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS §§ 1.2.6.1. 1.2.6.2.

has tried to understand fully the easements as an appraiser by analyzing their nature and effect and determining to what extent and how they benefit and burden the Johnsons and Transco.[83] Since he is not testifying as a legal expert but as an appraiser, even if the Commission were to disagree with him, his analysis of the easements would be helpful to the factfinder in understanding them—which the Commission is required to do—and in understanding the evidence.[84]

## D.   Manning's Including Tract 54 in Highest and Best Use

Transco also argues that Manning's entire testimony, or at least his testimony on the before- and after-taking value of the Johnsons' property, should be excluded because he improperly includes an adjacent tract of land (Tract 54) in analyzing the Johnsons' property's highest and best use.[85] To Transco, Tract 54 may not be included because it and the Johnson's property lack precise unity of ownership (different owners) and of use (each has a separate single-family residence).[86] The Johnsons argue that Tract 54 is jointly owned by Kenda Johnson and her mother and that Manning's including it is consistent with accepted appraisal methodology, which considers all tracts that have the same or an

---

[83] *See* Dkt. 76-1 at 10-11; Dkt. 78-1 at 12-26.
[84] No. 1:16-cv-02991-ELR, Dkt. 164 at 11 ("In determining the value of the permanent easements taken by Transco in this proceeding, you should consider all rights the permanent easement takes away from the property owner and makes exercisable by Transco within the permanent easement area.").
[85] Dkt. 76 at 2-4, 18-23.
[86] *Id.*

integrated highest and best use, whether or not title is identical.[87] And they argue that Transco improperly seeks a legal ruling on unity of ownership and use in the guise of a *Daubert* motion.[88] The Commission recommends that Transco's motion on this basis be denied.

Generally, federal law allows landowners proving highest and best use to include other tracts of land as long as there is a reasonable probability they will be combined in the reasonably near future. "The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value."[89] So fair market value "may be determined in light of the special or higher use of the land when combined with other parcels; it need not be measured merely by the use to which the land is or can be put as a separate tract. But in order for that special adaptability to be considered, there must be a reasonable probability of the lands in question being combined with other tracts for that purpose in the reasonably near future. In absence of such a showing, the chance of their being united for that special use is regarded 'as too remote and speculative to have any legitimate effect upon the valuation.'"[90]

---

[87] Dkt. 78 at 20-22.
[88] *Id.*
[89] *Olson,* 292 U.S. at 256.
[90] *U.S. v. Powelson*, 319 U.S. 266, 275-76 (1943).

Setting aside Manning's conclusions (including that Tract 54 should be included as part of the Johnsons' property's highest and best use), the Commission finds that Manning's methodology is sufficiently reliable.[91] According to the Yellow Book, government appraisers "must" consider larger parcels that are contiguous and have unity of ownership and highest and best use, whether the government's acquisition is total or partial and "even though title is not identical in all areas of the tract(s)."[92] While The Yellow Book does not apply to Manning,[93] his report and his testimony show that his methodology is consistent with it. He identified the larger parcel, assessed its topography and suitability, analyzed its zoning and current and potential uses, communicated with the Johnsons about these, and considered both parcels' ownership.[94] And his methodology is not rendered unreliable by his testimony about unity of ownership since the Commission is not relying on him for a legal opinion on this issue. As the Yellow Book provides, unity of ownership is a legal issue that appraisers may need a legal opinion on.[95] The Commission is competent to make a recommendation to the

---

[91] Transcontinental does not dispute Manning's qualifications on this issue.

[92] *See* UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS §§ 1.4.6, 1.2.7.3.1.

[93] *See supra* note 60.

[94] *See* Dkt. 76-1 at 6-9, 12-13, 19; Dkt. 78-1 at 4-8.

[95] *See* UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS § 1.4.6 ("Determining unity of ownership may require legal instruction.").

Court on any necessary legal rulings, including unity of ownership and use, subject to the Court's Instructions, its review, and applicable law.

The Commission also finds that Manning's testimony about including Tract 54 is integral to his testimony on highest and best use and therefore on valuation and damages. As such, his testimony would be helpful to the Commission in deciding just compensation, whether the Commission ultimately agrees with him or not, and in understanding the evidence on highest and best use and valuation. The issues Transco raises go to the weight of Manning's testimony's, not to admissibility. Transco may cross examine him about Tract 54 and whether there is a "reasonable probability" of its being combined with the Johnsons' property in the "reasonably near future." To the extent Transco does seek a legal ruling on unity of ownership or use, the Commission recommends that any such ruling be deferred until after the hearing and on a full evidentiary record.

## E.    Manning's Relying on the Johnsons' Subdivision Development Map

Transco next argues that Manning's expert testimony should be excluded because he improperly relies on a subdivision development map that he received from the Johnsons which is "purely speculative."[96] Transco also argues that this map was prepared only after the Johnsons heard about the pipeline, they have taken no steps to develop their property as a subdivision, and their property cannot

---

[96] Dkt. 76 at 2-3, 20-23.

be developed because it is encumbered by a CUVA.[97] In response, the Johnsons argue that an appraiser's considering lot yield conforms to standard real estate appraisal practice and Manning uses the Johnsons' map to show their property's lot yield before (22 lots) and after the taking (8-9 lots).[98] The Commission recommends that Transco's motion be denied.

Whether Manning may rely on the Johnson's subdivision map takes us to Rule 703.[99] Under this Rule, experts may base their opinions on "facts or data" that they "been made aware of or personally observed,"[100] and these facts or data "need not be admissible" as long as they are the kind "experts in the particular field would reasonably rely on."[101] If inadmissible, they may be disclosed "to a jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."[102]

The Commission finds that Manning may rely on the Johnsons' map because he was "made aware of it" and because documents and information like this,

---

[97] *Id.*

[98] Dkt. 78 at 22-23.

[99] To the extent Transcontinental alleges that the Johnsons' map is an insufficient factual basis for his testimony, Rule 702 governs. The Commission finds that Manning's testimony on highest and best use and on valuation and damages is not based solely on this map but on additional credible evidence, including evidence that the Johnsons will testify to.

[100] Fed. R. Evid. 703.

[101] *Id.*

[102] *Id.*

obtained from a landowner in a condemnation case, are the kind of facts or data that the landowner's appraiser providing expert testimony on property value would reasonably rely on. The Commission also finds that, assuming the map were inadmissible, it should be disclosed at trial. Inextricably bound up with Manning's testimony on highest and best use and therefore on valuation and damages, it will help the Commission to understand his "thought process[es] and determin[e] what weight to give to [his] opinion."[103] As lawyers, the Commissioners here can separately weigh the map's evidentiary and probative value, and its helpfulness to the factfinder outweighs any prejudicial effect.

## F.    Manning's Testimony about Comparable Sales

Last, Transco objects to Manning's testimony on the ground that his five property sales selected as comparables are not in fact comparable to the Johnson's property and therefore are not probative of its fair market value.[104] The Johnsons respond that, unless the dissimilarity between the comparable properties and the subject property is marked or unless Manning uses any per se improper comparables (e.g., properties purchased out of bankruptcy or those not purchased at arms' length), which he does not, Transco's critiques of Manning's comparables

---

[103] *Williams v. Illinois*, 567 U.S. 50, 78 (2012).

[104] Dkt. 76 at 23-26. Transco also points out a mathematical error in Manning's report, *id.* at 24 n.15, about which it may cross examine Manning.

go to the weight, not admissibility, of his testimony.[105] The Commission

recommends that Transco's motion on this point be denied.

Mindful that "real estate appraising is anything but an exact science,"[106] the

Commission finds that Manning's methodology on comparable sales is reliable. He

has investigated, selected, analyzed, and adjusted the sales of property that he

considers to be comparable to the Johnson's property[107] in a manner that appears to

be consistent with The Yellow Book.[108] The Commission also finds that Manning's

testimony about his proposed comparable sales will help the factfinder to make a

recommended finding on just compensation and understand the local real estate

market and the evidence to be presented at trial. While "comparable sales

constitute the best evidence of market value,"[109] how comparable any proffered

sales are to the subject property "goes to the weight rather than to the admissibility

of the evidence."[110] As this Circuit has said, "[s]ound and just trial practice is to

admit as many of the 'most comparable' sales available as is necessary to fairly

---

[105] Dkt. 78 at 23-24.

[106] *In re Brampton Plantation, LLC*, 2012 WL 707062, at *7.

[107] Dkt. 76-1 at 33-48, 57-62.

[108] *See* UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS §§ 1.5 – 1.5.2.3.

[109] *320 Acres*, 605 F.2d at 798; *accord U.S. v. Easement & Right of Way over a Tract of Land in Madison Cty.*, 405 F.2d 305, 308 (6th Cir. 1968) ("[E]vidence of sales of comparable property is persuasive evidence of market value, either as direct proof or in support of a witness's opinion.").

[110] *U.S. v. Easements & Rights-of-Way Over a Total of 15.66 Acres*, 779 F. App'x 578, 581-82 (11th Cir. 2019) (citing *Right of Way*, 405 F.2d at 307).

permit each side to present its argument of fair market value for the [factfinder's] consideration."[111] Here, Transco's objections to Manning's selected comparable sales raise questions of fact, but do not disqualify him as an expert or render his methodology unreliable or his testimony unhelpful.[112]

## III.   CONCLUSION

For the reasons discussed above, the Commission respectfully recommends that the Court:

1.      Deny Transco's motion to exclude the testimony of Defendants' expert witness Henry (Hank) Manning on the Johnsons' property's highest and best use;

2.      Grant Transcontinental's motion to exclude Manning's testimony about safety and a safety buffer;

3.      Deny Transcontinental's motion to exclude Manning's testimony about the property interests here;

4.      Deny Transcontinental's motion to exclude Manning's testimony about Tract 54 and including it in his highest and best use testimony; and

---

[111] *U.S. v. 480.00 Acres*, 557 F.3d 1297, 1306-07 (11th Cir. 2009) (citing *320 Acres*, 605 F.2d at 781 n.23); *see 0.161 Acres*, 837 F.2d at 1043, 1042-44 (11th Cir. 1988) (reversing district court's excluding evidence of landowner's real estate expert's and developer's comparable sales and remanding for new trial).
[112] Transco does not argue that Manning is not qualified to testify about comparable sales.

5.      Deny Transcontinental's motion to exclude Manning's testimony because he relies on the Johnsons' subdivision development map; and

6.      Deny Transcontinental's motion to exclude Manning's expert testimony about comparable sales.

On Manning's testimony that the Commission recommends not be excluded, the Commission reserves the right to exclude or disregard Manning's testimony at trial on these if it then determines that his testimony does not meet the requirements of the Federal Rules of Evidence, including Rule 702 and *Daubert*.

Respectfully submitted, this 22nd day of May, 2020,

/s/ Julian Juergensmeyer
Julian Conrad Juergensmeyer
Chair of the Commission